## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERARD GRIESBAUM, :
          Plaintiff :
  :
v. :
  :
AETNA LIFE INSURANCE COMPANY, :
          Defendant : JURY TRIAL DEMANDED

## COMPLAINT

AND NOW, comes Plaintiff, Gerard Griesbaum, by and through his undersigned counsel, and complains against Defendant, Aetna Life Insurance Company ("Aetna"), as follows:

### The Parties

1. The Plaintiff, Gerard Griesbaum, is an adult individual residing at 1304 Howard Avenue, Pottsville, Schuylkill County, Pennsylvania 17901.

2. Defendant Aetna is, upon information and belief, a corporation having an address and place of business located at P.O. Box 14560, Lexington, Kentucky 40512-4560.

3. At all times relevant, Aetna was engaged in the business of providing insurance products, including policies of long term disability for employers and employees.

4. At all times relevant, Aetna acted by and through its agents, adjusters and employees, all of whom were acting within the course and scope of their employment with Aetna in the handling of Mr. Griesbaum's claim.

## Jurisdiction And Venue

5. This Court has jurisdiction over this claim insofar as this claim relates to an employee benefits plan as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et. seq. This Court has jurisdiction over ERISA claims pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e).

6. Venue is proper in the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1337(e)(2) since Mr. Griesbaum resides within the jurisdictional confines of the United States District Court for the Middle District of Pennsylvania and Aetna regularly conducts business within the jurisdictional confines of the United States District Court for the Middle District of Pennsylvania.

## Gerard Griesbaum's August 14, 2001 Car Crash

7. Prior to August 14, 2001, Mr. Griesbaum worked as a pharmaceutical sales representative for Aventis Pharmaceuticals. Mr. Griesbaum covered a territory that included Schuylkill and Berks Counties in Pennsylvania.

8. On August 14, 2001, Mr. Griesbaum was involved in a serious car crash during the course and scope of his employment with Aventis on State Route 61 outside of Pottsville, Schuylkill County, Pennsylvania when a car travelling in

excess of 100 miles per hour crossed the center line in a construction zone and hit Mr. Griesbaum's car head-on.

9. As a result of his car crash, Mr. Griesbaum was life flighted from the scene to a trauma center.

10. As a result of his crash, Mr. Griesbaum suffered the following injuries:

    a. Severe fractures to the right foot and left hip requiring immediate surgeries on August 14, 2001;

    b. Multiple fractures to his pelvis;

    c. A fractured left foot;

    d. A fractured left femur;

    e. Four fractured ribs;

    f. Numerous cuts, scrapes, bruises and abrasions.

11. Mr. Griesbaum underwent additional orthopedic surgeries with surgical placement of plates and screws on August 21, 2001. He had additional orthopedic surgery to his left femur on March 21, 2002, and surgery to his right ankle in March 2005.

12. Mr. Griesbaum's injuries and multiple surgeries have left him with constant pain and discomfort, a limited range of motion in his right foot and ankle, a leg length discrepancy and permanent limitations on his abilities to walk, stand

and weight bear/carry. Every aspect of his life has been and continues to be negatively impacted due to his injuries and surgeries.

13.    Mr. Griesbaum's injuries resulted in lengthy hospitalization and substantial in-patient and out-patient rehabilitation. After 10 years, Mr. Griesbaum is still under orthopedic care, and also faces the possibility of more surgeries in the future.

### Gerard Griesbaum's Long Term Disability Policy

14.    At the time he was employed by Aventis Pharmaceuticals, Mr. Griesbaum was eligible for and availed himself of long term disability benefits through Aventis Pharmaceuticals, which long term disability were initially provided by Kemper Insurance Company.

15.    At a time specifically unknown to Mr. Griesbaum but believed to be known to Aetna, Aetna either acquired, merged with or somehow took over Mr. Griesbaum's long term disability policy from Kemper.

16.    Subsequent to the onset of his disability, Mr. Griesbaum began receiving long term disability benefits through Kemper Insurance Company, Broadspire Services and then Defendant Aetna.

17.    From the time Mr. Griesbaum began receiving long term disability benefits, Mr. Griesbaum regularly filled out and sent in numerous questionnaires to Kemper, Broadspire, and/or Aetna. These questionnaires provided Mr. Griesbaum's medical information, income information, and also disclosed the fact

that Mr. Griesbaum had received a third party settlement, a workers compensation lump sum settlement and social security disability benefits.

18. On or about January 22, 2004, Mr. Griesbaum received a $160,000.00 lump sum workers compensation settlement. The lump sum workers compensation settlement included payment for Mr. Griesbaum's medical expenses for one year, as well as payment for future wage/indemnity benefits.

19. By letter dated February 20, 2004, Mr. Griesbaum sent to Alicia Lopez, employee of Broadspire, a completed resource questionnaire. Specifically, under question 33 of the resource questionnaire, Mr. Griesbaum put Broadspire on notice of his lump sum settlement. The February 20, 2004, letter and its corresponding resource questionnaire are attached collectively as Exhibit "A."

20. In addition to regularly filling out and sending in to Kemper, Broadspire, and/or Aetna on an annual basis the questionnaires sent to him, Mr. Griesbaum also signed any and all authorizations to allow Kemper, Broadspire and/or Aetna to obtain information regarding Mr. Griesbaum.

21. Due to Mr. Griesbaum's disclosure of a social security benefits award in April of 2004, Broadspire wrote to Mr. Griesbaum's counsel on November 12, 2004, requiring reimbursement of $24,449.40 because of an overpayment. Mr. Griesbaum repaid Broadspire the requested $24,449.40 on or about January 4, 2005.

22. On or about August 20, 2009, Alicia Lopez, then working for Aetna, advised Mr. Griesbaum that Aetna had "misplaced" certain portions of his file or paperwork due to an "administrative error." Ms. Lopez then asked Mr. Griesbaum to forward information regarding his worker's compensation settlement.

23. In response to Ms. Lopez's request, Mr. Griesbaum again provided the details of Mr. Griesbaum's worker's compensation settlement.

### Aetna's Handling of Mr. Griesbaum's Long Term Disability Claim

24. On or about October 12, 2009, Ms. Lopez from Aetna wrote to Mr. Griesbaum and took the position that, because of Mr. Griesbaum's worker's compensation settlement, Aetna overpaid Mr. Griesbaum in the amount of $160,000.00. A copy of Aetna's October 12, 2009, letter is attached as Exhibit "B."

25. In November and December of 2009, Aetna unilaterally reduced Mr. Griesbaum's monthly long term disability benefits from $3,272.58 to $1,599.65, contending that Aetna was entitled to a deduction of $1,720.43 because of Mr. Griesbaum's January 2004 worker's compensation settlement.

26. Because of this unilateral reduction, Mr. Griesbaum's counsel wrote to Ms. Lopez on December 4, 2009, reminding Aetna that Mr. Griesbaum is represented by counsel and formally requesting an appeal of Aetna's unilateral decision about the $160,000.00 overpayment. A copy of the December 4, 2009, letter is attached as Exhibit "C."

27. On December 24, 2009, Ms. Lopez wrote to Mr. Griesbaum's counsel explaining Aetna's position that there was an overpayment of $160,000.00 and instructing counsel that it had 180 days to file a written appeal request. A copy of Aetna's December 24, 2009 letter is attached as Exhibit "D."

28. Beginning in January 2010, Aetna reduced Mr. Griesbaum's net monthly payments to zero because of Aetna's unilateral determination that there was an overpayment.

29. On April 22, 2010, Mr. Griesbaum's counsel once again wrote to Ms. Lopez of Aetna formally requesting an appeal of the decision that there was a $160,000.00 overpayment to Mr. Griesbaum. A copy of the April 22, 2010, letter is attached as Exhibit "E."

30. At some point after April 22, 2010, Aetna transferred Mr. Griesbaum's matter from Ms. Lopez to Ms. Lynne Fischbach.

31. On June 23, 2010, Mr. Griesbaum's counsel wrote to Ms. Fischbach from Aetna. In this letter, Mr. Griesbaum's counsel requested that Aetna "not correspond directly with Mr. Griesbaum at this point going forward." Mr. Griesbaum's counsel further stated that Ms. Fischbach agreed that "Aetna has not issued a final determination on the appeal ... requested and preserved in my April 22, 2010, letter" and because of this undersigned counsel would "refrain from filing an ERISA claim." A copy of the June 23, 2010, letter is attached as Exhibit "F."

7

32. At some point after June 23, 2010, Aetna transferred Mr. Griesbaum's matter from Ms. Fischbach to Ms. Marbel Amor.

33. On February 16, 2011, Mr. Griesbaum's counsel wrote to Ms. Amor stating that "we have received no formal response to the June 23, 2010, letter. Mr. Griesbaum appealed Aetna's December 24, 2009, letter and decision and is awaiting a written response to his appeal before pursuing his ERISA rights." A copy of the February 16, 2011, letter is attached as Exhibit "G."

34. On May 3, 2011, Mr. Griesbaum's counsel again wrote to Ms. Amor to question the delay in deciding Mr. Griesbaum's appeal. At the conclusion of his letter, Mr. Griesbaum's counsel once again insisted upon receiving "a written response stating clearly Aetna's final position [with respect to Mr. Griesbaum] within 30 days' time." A copy of the May 3, 2011, letter is attached as Exhibit "H."

35. On August 1, 2011, Ms. Amor from Aetna wrote to Mr. Griesbaum's counsel to explain how Aetna would be deducting benefit payments to Mr. Griesbaum. Further, Aetna advised that "overpayments are statements based on facts and as such they are not subject to appeal rights" even though all previous correspondence from Aetna advised Mr. Griesbaum of his right to appeal the overpayment determination. Aetna's August 1, 2011, letter is attached as Exhibit "I."

36. On August 5, 2011, Ms. Amor from Aetna disregarded Mr. Griesbaum's counsel's request to communicate with counsel and wrote directly to Mr. Griesbaum. In this letter, Aetna states that it has "referred the outstanding overpayment balance of $127,453.34 to collections." Despite notifying counsel that overpayments are not subject to an appeal, Aetna advised Mr. Griesbaum that "if you disagree with this determination, in whole or in part, you may file a written request to appeal this decision within 180 days of receipt of this notice." Aetna's August 5, 2011 letter is attached as Exhibit "J."

37. On August 15, 2011, Mr. Griesbaum's counsel wrote to Ms. Amor reiterating that Aetna should correspond "with me and not Mr. Griesbaum directly." Mr. Griesbaum's counsel further stated that since Mr. Griesbaum is challenging and appealing the overpayment, "why then would anything be sent to collections?" The August 15, 2011, letter then states once again to "please accept this letter as a formal appeal of any determination regarding an overpayment." A copy of the August 15, 2011, letter is attached as Exhibit "K."

38. At some point after August 15, 2011, Aetna transferred Mr. Griesbaum's matter from Ms. Amor to Ms. Yolanda Matos-Gerena.

39. Despite all the correspondence with Mr. Griesbaum's counsel, Aetna again contacted Mr. Griesbaum directly by letter dated October 4, 2011, written by Ms. Matos-Gerena. Aetna states that Mr. Griesbaum "must contact us within 15 days following the date of this letter. If not contacted, we will refer the

overpayment to collections." The letter also states that the amount owed is $127,454.85, a different amount than that stated by Aetna on August 5, 2011. A copy of Aetna's October 4, 2011, letter is attached as Exhibit "L."

40. On October 18, 2011, Mr. Griesbaum's counsel wrote once again to Aetna notifying Aetna of Mr. Griesbaum's long-standing intention to formally appeal the determination of an overpayment. Mr. Griesbaum's counsel stated that "it is imperative that Aetna contact me immediately to work out this situation." A copy of undersigned counsel's October 18, 2011, letter is attached as Exhibit "M."

41. To date, neither Mr. Griesbaum nor his counsel have heard back from Aetna regarding Mr. Griesbaum's appeal of any determination regarding an overpayment.

42. To date, Aetna has unilaterally deducted and withheld from Mr. Griesbaum $69,842.46 dating back to November 2009. In addition, Aetna maintains that it is entitled to collect on an alleged overpayment of either $127,453.34 or $127,454.85.

**COUNT I**
**Gerard Griesbaum**
**v.**
**Aetna**
**Recovery of Plan Benefits under ERISA,**
**Pursuant to 29 U.S.C. § 1132(A)(1)(B)**

43. Paragraphs 1 through 42 above are fully incorporated by reference.

10

44. Mr. Griesbaum's claim "relates to" an "employee welfare benefit plan" as defined by the Employee Retirement Income Security Act – ERISA – 29 U.S.C. § 1001 et seq.

45. Furthermore, Mr. Griesbaum's long term disability policy constitutes a "plan under ERISA."

46. On or about February 20, 2004, Aetna received notice that Mr. Griesbaum had received a lump sum settlement for worker's compensation. In other words, Aetna's statute of limitations to collect monies from Mr. Griesbaum due to an overpayment began to run on or about February 20, 2004.

47. Accordingly, Aetna had no right to deduct any monies due to an alleged overpayment from Mr. Griesbaum after February 20, 2008 because the statute of limitations had run on its potential cause of action or claim for an overpayment.

48. Despite this, Aetna has unilaterally deducted and withheld from Mr. Griesbaum $69,842.46 dating back to November 2009. In addition, Aetna seeks to collect an alleged overpayment in excess of $127,000.00.

WHEREFORE, Plaintiff, Gerard Griesbaum, respectfully requests that this Honorable Court grant judgment in his favor and against Defendant, Aetna Life Insurance Company, in the amount of $69,842.46, together with allowable interest and costs, representing the wrongfully withheld benefits from him, and further

requests this Court preclude any further recovery by Aetna for past benefits paid to him.

## COUNT II
### Gerard Griesbaum
### v.
### Aetna
**Recovery Of Attorney's Fees And Costs Pursuant To 29 U.S.C. § 1132(g)(1)**

49. Paragraphs 1 through 48 above are fully incorporated.

50. 29 U.S.C. § 1132(g)(1) authorizes this Court to award Mr. Griesbaum reasonable attorney's fees and costs in an ERISA action.

51. As a result of Aetna's actions and inactions, Mr. Griesbaum has been forced to retain legal counsel and has and will continue to incur attorney's fees and costs in prosecuting this action.

WHEREFORE, Plaintiff, Gerard Griesbaum, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, Aetna Life Insurance Company, for counsel fees and costs in an amount to be determined at the conclusion of this matter.

        Respectfully submitted,
        RILEY, FANELLI, EVANS & PATEL, P.C.

        *Sudhir R. Patel/s/*
        SUDHIR R. PATEL, ESQUIRE
        Attorney I.D. No. 75914
        The Necho Allen
        No. 1 Mahantongo Street
        Pottsville, PA 17901
        (570) 622-2455